UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------X
JAMES PULLANO,

                Plaintiff,

                                                   Docket No.

   v.

NATIONAL RAILROAD PASSENGER CORP.,

                Defendant
---------------------------------------------------------------X

## COMPLAINT

Plaintiff, by his attorneys, the Naumes Law Group, LLC, complain of the Defendant and allege:

## THE PARTIES

1. Plaintiff, James Pullano, is a resident of Wilmington, Massachusetts.

2. The defendant is a railroad carrier corporation providing railroad transportation, in interstate commerce by rail and operates a railroad system and railroad yards within the jurisdiction of this Court and in various other States, with a usual place of business in Massachusetts.

3. Prior to September 21, 2017, and at all times hereinafter mentioned, the defendant employed the plaintiff, James Pullano, as a foreman under its direction, supervision and control and in furtherance of defendant's business in interstate commerce.

4. Prior to September 21, 2017, and at all times hereinafter mentioned, the defendant maintained, operated and controlled the Amtrak's Southampton Yard in Boston, Massachusetts which contained defendant's tracks, rails, switches, sidings,

roadbeds and appurtenances thereto, over, through and upon which the defendant operated engines, trains and cars under its control and direction.

5. During all times herein mentioned, the defendant was and is engaged in interstate commerce by providing railroad transportation among multiple states.

## JURISDICTION AND VENUE

6. The plaintiff brings the First Cause of Action against the defendant for violations of the Federal Rail Safety Act, 49 U.S.C. § 20109 (FRSA).

7. This Court has subject matter jurisdiction in this case pursuant to the Federal Railroad Safety Act, 49 U.S.C. § 20109(d)(3).

8. Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District, because defendant resides in this District and/or because defendant does business in this District.

## PROCEDURAL FACTS

9. On February 23, 2018, the plaintiff James Pullano, filed a FRSA Complaint with the Secretary of Labor's Regional OSHA Whistleblower Office. That was within 180 days from the date the plaintiff became aware of the defendant's adverse or unfavorable personnel action against him.

10. The Regional OSHA Whistleblower Office commenced its investigation, and the plaintiffs fully cooperated with OSHA's investigation. However, Department of Labor did not issue a final decision within 210 days after the filing of the FRSA Complaint. The delay was not due to any bad faith on the part of the plaintiff.

11. Pursuant to Section (d)(3) of the FRSA, the plaintiff has a statutory right to bring an original action in a United States district court for a jury trial regarding the Railroad's violations of the FRSA. 49 U.S.C. § 20109(d)(3).

12. Pursuant to 49 U.S.C. § 20109(d)(3), the plaintiff now bring this original action at law and equity for *de novo* review by the United States District Court of the District of Massachusetts, which Court has jurisdiction over this FRSA action and FELA action without regard to the amount in controversy.

## FACTS

13. At the time of the defendant's FRSA violations, the plaintiff was employed by the defendant and qualified as an employee within the meaning of 49 U.S.C. § 20109.

14. On or about 2011, Amtrak hired Mr. Joseph C. Allione, Jr. as the assistant superintendent of Amtrak's mechanical department at Southampton Yard in Boston, Massachusetts.

15. At all times relevant herein, Mr. Allione encouraged Amtrak employees to skirt safety inspections in favor of on time performance.

16. At all times relevant herein, Mr. Allione stressed on time performance and told employees that identified defects or unsafe conditions that they were "looking to hard."

17. Throughout his tenure as assistant superintendent Mr. Allione would regularly demand that Mr. Pullano sign off on federally manded safety inspection reports that were not performed.

18. FRA safety inspections carry criminal penalties and civil penalties of up to $105,000.00 per violation. See 49 CFR Appendix A to Part 209, Statement of Agency Policy Concerning Enforcement of the Federal Railroad Safety Laws.

19. In January of 2017, Plaintiff sent reports of hazardous and unsafe working conditions to the National Aeronautics and Space Administration Confidential Close Call Reporting System ("C³RS").

3

20.     C³RS is a partnership between the National Aeronautics and Space Administration ("NASA") and the Federal Rail Administration ("FRA"), participating railroad carriers, and labor organizations. C³RS is designed to improve railroad safety by collecting and studying reports detailing unsafe conditions and events in the railroad industry. It enables employees to report unsafe working conditions or "close calls" voluntarily and confidentially.

21.     On February 14, 2017, Mr. Pullano reported an unsafe working condition in his work schedule notes, specifically, that Mike Kiley had removed another employees blue tag protection from the board.

22.     In June of 2017, Mr. Pullano cooperated with Amtrak in a disciplinary hearing of co-worker Jose De Los Santos.

23.     Mr. Allione and other supervisors at Amtrak were angered by Mr. Pullano's testimony at the hearing.

24.     On February 14, 2017, Amtrak General Foreman Mike Kiley asked Mr. Pullano to write a statement for Mr. Allione describing what Mr. Pullano had said at Mr. De Los Santos' hearing.

25.     On the same date Mr. Pullano refused to write the statement and instructed Mr. Kiley that Amtrak had already taken his statement for Mr. De Los Santos' hearing.

26.     On February 15, 2017, Mr. Pullano received documents that he was being charged with insubordination.

27.     On March 3, 2017, Mr. Kiley threatened and pressured Mr. Pullano, asking him why he was being difficult and refusing to sign false inspection reports.

28.     On March 3, 2017 after his exchange with Mr. Kiley, Mr. Pullano was hospitalized with work related traumatic stress disorder.

29.     Due to his stress disorder, Mr. Pullano was unable to return work.

30.     On September 21, 2017, Amtrak notified Mr. Pullano that he was medically disqualified from working at Amtrak.

## COUNT I
## Violation of FRSA

31.     The plaintiff, James Pullano, adopts by reference and realleges each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if set forth under this cause of action.

32.     The plaintiff, James Pullano, engaged in protected activity under the FRSA when he cooperated with Amtrak in Mr. de Los Santos' disciplinary proceedings.

33.     The plaintiff, James Pullano engaged in protected activity under the FRSA when he refused to assist Amtrak management in the violation of Federal Law and Federal Railroad Regulations.

34.     The plaintiff, James Pullano, engaged in protected activity under the FRSA when he reported an unsafe working condition via the C³RS system in January of 2017.

35.     The plaintiff, James Pullano, engaged in protected activity under the FRSA when he reported an unsafe working condition in his work schedule notes in February of 2017.

36.     The defendant had knowledge of all the protected activities referenced above.

37.     The defendant took adverse or unfavorable actions against the plaintiff, James Pullano, in whole or in part due to plaintiff's protected activities.

38.     The adverse actions included bringing charges against plaintiff and medically disqualifying him from work.

39. In so doing, the defendant acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

WHEREFORE, in order to encourage employees to freely report all injuries and safety concerns without fear of any retaliation, thereby ensuring the Federal Rail Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area of our nation's railroad operations, the plaintiff demands a Judgment under the FRSA for all relief necessary to make him whole, including but not limited to: expungement of all references to any disciplinary action; lost benefits with interest; lost wages with interest; compensatory damages for economic losses due to defendant's conduct; compensatory damages for mental anguish and emotional distress due to defendant's conduct; the statutory maximum of punitive damages; and special damages for all litigation costs including expert witness fees and attorney fees.

WHEREFORE, plaintiff demands judgment against the defendant on Count I in the sum of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS together with the costs and disbursements of this action.

**JURY TRIAL REQUESTED**

James Pullano
By his attorneys,

DATE: June 29, 2020

/s/ Christopher C. Naumes
Robert T. Naumes, BBO #:367660
Christopher C. Naumes, BBO #: 671701
NAUMES LAW GROUP, LLC
2 Granite Avenue, Suite 425
Milton, MA 02186
(617) 227 8444
robert@Naumeslaw.com
christopher@naumeslaw.com
Attorneys for Plaintiff